UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTHONY GILLESPIE,

                        Plaintiff,

v.                                                 9:07-CV-0694
                                                        (GLS/GHL)

JUSTIN TAYLOR, et al.,

                        Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

ANTHONY GILLESPIE, 99-A-5737
Plaintiff *pro se*
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

HON. ANDREW M. CUOMO                    CHRISTOPHER W. HALL, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

       This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Anthony Gillsepie alleges that his constitutional rights were violated when he was exposed to second-hand smoke, also known as environmental tobacco smoke ("ETS"), in the dormitory bathroom at Gouverneur Correctional Facility. Currently pending before the Court is Defendants' motion for

summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 50.) For the reasons that follow, I recommend that Defendants' motion be granted.

**I.      FACTUAL AND PROCEDURAL SUMMARY**

Plaintiff, a state prisoner, was housed at Gouverneur Correctional Facility in 2006 and 2007. In a medical history form completed on September 20, 2006, Plaintiff indicated that he had suffered hypertension, chicken pox, and vision impairment in the past and that he currently suffered chronic back pain for which he was taking pain medication. He denied suffering from asthma in the past. (Dkt. No. 50-3, Ex. B.)

Plaintiff was housed in a dormitory from October 2006 to February 2007. (Dkt. No. 50-2 ¶ 10.) Plaintiff claims that in October 2006, he complained several times to Defendant Correction Officer Cocoa about high levels of second hand smoke in the dormitory bathroom. Plaintiff said that the smoke posed an unreasonable risk to his health and asked Defendant Cocoa to enforce the facility ban on smoking. She did not do so. (Dkt. No. 1 (Facts) ¶ 9.) On other occasions in October and November 2006, Plaintiff asked Defendant Cocoa and Defendant Correction Officer Hicks to enforce the ban. (Dkt. No. 1 (Facts) ¶ 11.)

On October 29, 2006, Plaintiff wrote a letter to Defendant Justin Taylor, the superintendent of Gouverneur, regarding his concerns about the second hand smoke in the dormitory bathroom. (Dkt. No. 1 (Facts) ¶ 10.) Plaintiff stated that the smoke exposed him to "an unreasonable risk of harm to my health" and that he should not have to "suffer from the smell of tobacco smoke when I use the dorm bathroom." (Dkt. No. 1, Ex. A.) Plaintiff did not state that he suffered from asthma.

Plaintiff filed a formal grievance regarding the smoke in the dormitory bathroom. (Dkt.

No. 1, Ex. A.) The inmate grievance resolution committee ("IGRC") denied the grievance on November 21, 2006. (Dkt. No. 1, Ex. A.) The IGRC stated that Plaintiff "will not be removed from his present dorm, also this facility will continue to follow the no smoking and hazzard policy." *Id*. Plaintiff appealed to Defendant T. Eagan, the director of the inmate grievance program. (Dkt. No. 1 (Facts) ¶ 16, Ex. B.) Plaintiff did not state that he suffered from asthma. The central office review committee denied the appeal on December 20, 2006, advising Plaintiff "to address his concerns to the area supervisor for the most expeditious means of resolution." (Dkt. No. 1 (Facts) ¶ 17, Ex. C.)

Plaintiff filed the complaint in this action on June 29, 2007. (Dkt. No. 1.) The complaint alleges that Plaintiff suffered light headaches, dizziness, and shortness of breath as a result of exposure to ETS. (Dkt. No. 1 (Facts) ¶ 13.) The complaint does not mention the word "asthma." Plaintiff requests damages, a "stronger policy on inmates violating the no smoking policy," and an order requiring "all defendants and officials to enforce the no smoking policy with zero tolerance." (Dkt. No. 1 (Causes of Action) ¶ 7.)

Defendants now move for summary judgment. (Dkt. No. 50.) Plaintiff has opposed the motion. (Dkt. No. 51.)

## II.   APPLICABLE LEGAL STANDARDS

### A.   Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for

summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Major League Baseball Properties, Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).  Only after the moving party has met this burden is the non-moving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[1]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]  In determining whether a genuine issue of material[3] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[4]

### B.     Legal Standard Governing Motion to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of

---

[1]     *Matsushita*, 475 U.S. at 585-86; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . .").

[2]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

[3]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[4]     *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted]; *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted.[5] For these reasons, it is appropriate to briefly summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2);[6] or (2) a challenge to the legal cognizability of the claim.[7]

---

[5] The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."

[6] *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[8] The main purpose of this rule is to "facilitate a proper decision on the

---

formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief.'").

[7]  *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[8]  *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

merits."⁹  A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."¹⁰

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57, 570 (2007)).  Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not *shown* - that the pleader is entitled to relief."  *Iqbal*, 129 S.Ct. at 1950 (emphasis added).

---

⁹     *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

¹⁰     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

It should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[11] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[12] In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[13] Moreover, "courts

---

[11] *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[12] *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[13] "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'" *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not. *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[14] Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[15] Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.[16] In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[17]

---

[14] *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

[15] *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[16] *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[17] *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see, e.g.*, *See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7 (N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process–was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint–which included the fact that plaintiff alleged no violation of either the

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit has observed),[18] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[19] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[20] Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal

---

Constitution or laws of the United States, but only negligence–were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D. Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the defendants were protected from liability by Eleventh Amendment immunity–was substantive and not formal in nature, rendering repleading futile).

[18]  *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[19]  *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[20]  *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . . we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural

rules of pleading are not absolutely suspended."[21]

### III.    ANALYSIS

Plaintiff claims that Defendants violated his Eighth Amendment rights by exposing him to environmental tobacco smoke ("ETS"). Eighth Amendment jurisprudence on the subject of prison ETS claims distinguishes between claims of present harm from ETS exposure (such as where exposure to ETS creates or exacerbates a medical condition) and claims that ETS exposure will cause the prisoner harm in the future. *See e.g. Davidson v. Coughlin*, 920 F. Supp. 305 (N.D.N.Y. 1996). Plaintiff appears to be asserting both types of ETS claims. (Dkt. No. 1(Facts) ¶ 17)(ETS "poses an unreasonable risk of harm to Plaintiff'[s] health now and [in] the future"). I will address these claims separately.

   1.    <u>Present Harm</u>

ETS claims of present harm are analyzed, like other Eighth Amendment medical claims, pursuant to the framework set out in *Estelle v. Gamble*, 429 U.S. 97 (1976). Under that framework, to prevail on an Eighth Amendment claim of inadequate medical care, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need. *Estelle*, 429 U.S. at 104; *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

---

and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

   [21]    *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980).

To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting)(citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance* , 143 F.3d at 702.  Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain.  *Chance*, 143 F.3d at 702-03.

Defendants argue that Plaintiff cannot establish that he suffered a serious medical condition as a result of his exposure to ETS.  Defendants are correct.  As he admitted at his deposition, Plaintiff does not, for instance, suffer from asthma.  (Dkt. No. 50-5 at 61:14-17; 64:24-65:1.)  Nor do his prison medical records indicate that he experienced any serious reactions to ETS.  Plaintiff sought and received medical care frequently between September 21, 2006, and April 17, 2007.  For the most part, Plaintiff sought medical care for chronic back pain. (Dkt. No. 50-3 ¶ 10.)  On eight occasions in that period, Plaintiff complained of shortness of breath and/or coughing.  On November 16, 2006, Plaintiff complained of "vague chest pain." (Dkt. No. 50-3, Ex. A.)  A chest x-ray taken that day revealed unremarkable findings.  (Dkt. No. 50-3 ¶ 19.)  On December 14, 2006, Plaintiff complained of shortness of breath at night.  Upon examination, his lungs were found to be clear and his blood oxygen saturation level at 98%, which is normal.  (Dkt. No. 50-3 ¶ 11.)  On January 4, 2007, Plaintiff complained of problems with his lungs and chest pain.  Upon examination, the doctor found no problems and ordered no

treatment. (Dkt. No. 50-3 ¶ 12.) On January 10, 2007, Plaintiff complained of having a cough. He was also suffering at that time from "obvious" dyspepsia but denied it. A nurse practitioner prescribed Zantac to treat the dyspepsia. (Dkt. No. 50-3 ¶ 13.) On January 18, 2007, Plaintiff said that he had asthma as a child and complained of shortness of breath and difficulty breathing. The nurse found no wheezing, that Plaintiff's lungs were clear and that respiration was easy, and that Plaintiff's blood saturation level was again at 98%. At Plaintiff's request, the nurse referred him to Dr. Sturtz for evaluation. (Dkt. No. 50-3 ¶ 15.) On February 1, 2007, Dr. Sturtz examined Plaintiff. At that time, Plaintiff complained that he had been short of breath for two months. Dr. Sturtz found no cough and that Plaintiff's blood oxygen saturation level remained at 98%. Dr. Sturtz ordered a chest x-ray. (Dkt. No. 50-3 ¶ 17.) The x-ray revealed unremarkable findings for the lungs and chest wall. (Dkt. No. 50-3 ¶ 18.) On April 9, 2007, Plaintiff complained about coughing "at the hour of sleep." The nurse prescribed cough syrup. (Dkt. No. 50-3 at ¶ 20.) On April 12, 2007, Plaintiff complained of cold symptoms including a dry throat and a nonproductive cough. The nurse issued decongestant and throat lozenges. (Dkt. No. 50-3 ¶ 21.)

A rational trier of fact could not find, based on this evidence, that Plaintiff suffered from a serious medical condition. *See Liggins v. Parker*, No. 9:04-CV-0966, 2007 WL 2815630, at *16 (N.D.N.Y. Sept. 25, 2007)(granting summary judgment for defendants on plaintiff's ETS claim of present harm from ETS exposure because although plaintiff had complained of shortness of breath, his medical records indicated that plaintiff was not asthmatic and that x-rays

of plaintiff's chest were normal)[22].  Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's claims regarding present harm from exposure to ETS.

Even if the evidence raised a genuine issue of material fact that Plaintiff suffered from a serious medical condition as a result of exposure to ETS, there is no evidence that Defendants were deliberately indifferent to that need.  Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  To establish deliberate indifference, an inmate must prove that (1) the defendant was aware of facts from which the inference could be drawn that the inmate had a serious medical need, and (2) the defendant actually drew that inference.  *Farmer*, 511 U.S. at 837; *Chance*, 143 F.2d at 702-03.  Non-medical personnel, such as the named defendants here,  may exhibit deliberate indifference by deliberately defying the express instructions of a prisoner's doctors or deliberately interfering with medically prescribed treatment solely for the purpose of causing an inmate unnecessary pain.  *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).  There is no evidence that Defendants could have drawn, or did in fact draw, the inference that Plaintiff had a serious medical condition caused or exacerbated by ETS.  As discussed above, nothing in Plaintiff's medical file indicated that he suffered a serious medical condition that might be affected by exposure to ETS.  No doctor ever suggested that Plaintiff be removed from areas that exposed him to ETS.  (Dkt. No.

---

[22] The undersigned will provide a copy of this unpublished decision to Plaintiff in light of the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

50-3 ¶ 23.)  Therefore, even if the evidence raised a triable issue of fact that Plaintiff suffered from a serious medical condition, I would recommend that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's claim regarding present harm from ETS exposure.

    2.    <u>Future Harm</u>

In order to succeed on an ETS claim alleging future harm, a plaintiff must establish both an objective and a subjective element.  *Gill v. Smith*, 283 F. Supp. 2d 763, 766 (N.D.N.Y. 2003).  To establish the objective element, the plaintiff must show that he was exposed to unreasonably high levels of ETS.  *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Gill*, 283 F. Supp. 2d at 766.  Determining whether a plaintiff was exposed to unreasonably high levels of ETS

> requires more than scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS.  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling*, 509 U.S. at 36.  As this quote indicates, in contrast to a claim of present harm from ETS, the focus in a claim of future harm from ETS is *not* on whether the plaintiff has sought treatment or complained of ailments associated with exposure to ETS.  *McPherson v. Coombe*, 29 F. Supp. 2d 141, 145-46 (W.D.N.Y. 1998).  Rather, the objective element for a claim regarding future harm from ETS focuses on whether levels of ETS in the facility were so high that they violated contemporary standards of decency.

A review of cases in which prisoners' claims regarding future harm from ETS survived summary judgment demonstrates the type of egregious facts necessary to raise a genuine issue of

material fact.  For example, in *Warren v. Keane*, 937 F. Supp. 301, 303 (S.D.N.Y. 1996), the court denied the defendants' motion for summary judgment where the evidence showed that smoke in the poorly-ventilated facility was so thick that the plaintiffs had to hold wet handkerchiefs over their noses and mouths while in common areas such as the chapel, auditorium, gym and recreational area.  In *McPherson,* the court denied the defendants' motion for summary judgment because the evidence showed that the plaintiff could not access the prison's day room due to the thick smoke, had to pass through the day room to reach the bathroom, and was housed in poorly ventilated and heavily populated units (first with 41 other prisoners and then with 90 other prisoners) where smoking was allowed.  In *Gill v. Smith*, 283 F. Supp. 2d 763 (N.D.N.Y. 2003), the court denied the defendants' motion for summary judgment where, viewing the facts in the light most favorable to the plaintiff, the evidence showed that the asthmatic plaintiff was forced to spend a substantial part of each day in a room with a prison employee who smoked constantly.

Cases without such egregious facts have not survived summary judgment.  For example, in *Davidson v. Coughlin*, 920 F. Supp. 305, 309 (N.D.N.Y. 1996), the court granted summary judgment for the defendants where the plaintiff, who was single-celled, failed to demonstrate "what the level of smoke in the facility was or whether that degree of exposure would have been serious enough to cause or aggravate a current or future serious illness."  In *Liggins*, the court granted summary judgment for the defendants where the evidence showed only that the plaintiff "was subjected to second hand smoke at the hands of fellow inmates as well as jail workers" and that prisoners' smoking habits were encouraged by jail officials.  The court deemed this cursory evidence insufficient to "describe conditions which rise to a level which today's society chooses

not to tolerate." *Liggins*, 2007 WL 2815630, at * 4, 17.

Here, even when viewed in the light most favorable to Plaintiff, the evidence does not raise a genuine issue of material fact that the levels of ETS to which Plaintiff was exposed violated contemporary standards of decency.  Although Plaintiff has stated that the bathroom was quite smoky, he has not alleged or produced evidence that he was exposed to ETS in his sleeping quarters, his prison job, or in any of the other common areas of the facility.  Even if he encountered second hand smoke each and every time that he used the restroom (which he does not allege), his ETS exposure would be far less than the exposure discussed in *Warren, McPherson*, and *Gill*.  Therefore, I find that a rational jury could not find that Plaintiff has established the objective prong of his claim of future harm from ETS and I recommend that the Court grant Defendants' motion for summary judgment[23].

---

[23] Plaintiff's showing as to the subjective element is somewhat stronger than his showing as to the objective element.  To establish the subjective element, a plaintiff must show "that the defendants were deliberately indifferent to the plaintiff's medical needs or safety in exposing him to ETS, 'determined in light of the prison authorities' current attitudes and conduct.'" *Gill*, 283 F. Supp. 2d at 767 (quoting *Helling*, 509 U.S. at 36).  The mere fact that a prison has a no-smoking policy that is not fully enforced is insufficient to establish deliberate indifference.  *Davidson*, 920 F. Supp. at 309 n. 1.  However, the fact that a facility has instituted a smoking ban can also be seen as an admission that prison officials are aware that ETS poses a health risk.  *Warren*, 937 F. Supp. at 306; *Gill*, 283 F. Supp. 2d at 769.  Officials' failure to respond to a prisoner's complaints about ETS can also help to establish the subjective element. *Gill*, 283 F. Supp. 2d at 769.  While it is undisputed that Defendant Hicks issued misbehavior reports to inmates for smoking at least four times during the relevant period (Dkt. No. 50-2 ¶ 8), the evidence also shows that Plaintiff's requests for Defendants Cocoa and Gill to enforce the ban were frequently ignored while the officers engaged in pursuits such as watching television or reading the newspaper. (Dkt. No. 50-5 at 45:13-16.) This evidence could raise a genuine issue of material fact regarding the subjective element, if Plaintiff raised a triable issue of fact regarding the objective element.

I note that the subjective element is also the "appropriate vehicle to consider arguments regarding the realities of prison administration." *Helling*, 509 U.S. at 37.  Defendants' Statement of Material Facts establishes that Defendants Cocoa and Hicks worked alone during their shifts in the dormitory. (Dkt. No. 50-2 ¶¶ 5, 7.) Defendants do not explicitly argue, based on this fact,

In light of my finding that there is no triable issue regarding the constitutional merits, I decline to address Defendants' arguments regarding personal involvement and qualified immunity.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 50) be **GRANTED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Liggins v. Parker*, No. 9:04-CV-0966, 2007 WL 2815630 (N.D.N.Y. Sept. 25, 2007) in light of the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: August 17, 2009
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

that security concerns made it infeasible for the sole officer on duty to spend any significant time enforcing the smoking ban in the dormitory bathroom. Defendants Cocoa and Hicks have not provided affidavits supporting Defendants' motion for summary judgment. Therefore, I would be unable to find, based on the record before me, that the realities of prison administration were such that Defendants could not enforce the smoking ban without jeopardizing facility security.

18